## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY L. ALBERT,** | : | **CIVIL ACTION NO. 1:05-CV-2380** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **JEFFREY W. WEAVER and** | : | |
| **RICHARD HIESTER,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Jerry L. Albert brings claims under 42 U.S.C. § 1983 and state law against defendants Jeffrey W. Weaver and Richard Hiester, police officers with the Middletown Borough Police Department. Defendants have moved for summary judgment on all counts. (Doc. 19.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

## I.    BACKGROUND

Albert filed the instant suit on November 16, 2005, asserting that defendants Weaver and Hiester violated his constitutional rights to be free from malicious and retaliatory prosecutions and the use of excessive force, as well as his state-law right to be free from assault and battery. (Doc. 1.)

The events underlying Albert's claims began in February 2004, when Officer Weaver was investigating an incident of institutional vandalism and trespassing at a local middle school in Middletown, Pennsylvania. (Doc. 18 ¶ 1.) One of the suspects believed to have been involved was Gregory Albert, plaintiff's juvenile son. (Id.) On February 26, 2004, Weaver called Gregory and his mother, Patricia Waite, plaintiff's

ex-wife, to the Middletown Borough Police Department to explain the middle school's allegations and the police investigation process. (Id. ¶¶ 1-2.)  Although he was not under arrest at the time, Gregory and his mother were advised of his rights under the law. (Id. ¶ 3.)

Near the beginning of the meeting between Weaver, Gregory, and Ms. Waite, plaintiff Jerry Albert was contacted and asked to come to the station to participate in the discussion. (Id. ¶ 4.)  Albert arrived at the station shortly thereafter, identified himself to the dispatcher, and explained that he was there to speak with Officer Weaver. (Id. ¶ 5; Pl's Dep. 44-45.)  When Weaver introduced himself, Albert claims to have used his left hand to shake hands and to have explained to Weaver that he recently had surgery on his right arm, limiting its usage. (See Pl's Dep. 44-45; Doc. 30 ¶ 4; Doc. 18 ¶ 12.)

Officer Weaver directed Albert to the small interview room where Gregory and Ms. Waite were sitting on the side of the interview desk near the door. (Doc. 18 ¶ 5; Decl. of Gregory Albert at 1.)  Without offering Albert a chair, Officer Weaver returned to his seat on the other side of the desk while Albert remained standing with his back to the closed office door facing Weaver. (Doc. 30 ¶ 5; Decl. of Gregory Albert at 1; Pl's Dep. 48-49.)  Albert described Weaver as being "excessively agitated during this interaction due to his having worked a 16-hour shift." (Doc. 30 ¶ 5.)  While Weaver was discussing the investigation, Albert raised some questions that were not answered to his satisfaction, and soon the conversation escalated into an argument between the two men. (Doc. 18 ¶ 7; Doc 30 ¶ 7.)  Although the parties

2

dispute the manner in which it happened, they agree that Weaver got up from his seat, approached Albert, and informed him that the meeting was over and that Albert needed to leave the police station.[1]  (Docs. 18 & 30 ¶ 8.)  After Weaver opened the interview room door, he and Albert moved their heated discussion into the hallway, where other officers, including defendant Hiester, had gathered because of the commotion.  (See Weaver Dep. 28-29; Hiester Dep. 23-24, 31; Pl's Dep. 60-63; see also Decl. of Gregory Albert at 1-2; Doc. 18, Ex. 3 at 25.)

Defendants claim Albert was asked to leave the premises on several occasions by Weaver and another Middletown Borough police officer who was in the hallway.[2]  (Doc. 18 ¶ 10; Doc. 18, Ex. 3, at 42.)  When Albert did not immediately comply with the request to leave, defendants Weaver and Hiester, on Albert's right and left, respectively (Pl's Dep. 64), "each grabbed one of Plaintiff's arms, cupped their hands under each of Plaintiff's elbows, lifted him off the ground, and carried him down the hallway to the doorway to the police station, whereupon they pushed

---

[1]  Weaver contends that Albert became upset and began to put his hand in front of Weaver's face, prompting him to stand and make the request that Albert leave.  (Doc. 18 ¶ 8 & n.1.)  Albert claims that he remained calm, but that Weaver "blew up" at him, charging at him from behind the desk (Doc. 30 ¶ 8), "us[ing] his full body to suppress [Albert's]"  (Pl's Dep. 57-59), and "forcefully grabb[ing Albert's] right arm with both of his" to physically remove Albert from the office (Decl. of Gregory Albert at 2).

[2]  Without citing to supporting evidence of record, Albert admits only that Weaver asked him to leave on one occasion.  Notably, the Pennsylvania Superior Court determined that Albert was asked to leave the premises on at least three occasions.  Commonwealth v. Albert, No. 1072 MDA 2004, at 6 (Pa. Super. Ct. June 10, 2005).

3

him out of the door."  (Doc. 18 ¶ 11.)[3]  The parties dispute whether Albert cried out in pain when being escorted from the property and whether he mentioned or exhibited other outward signs of his recent surgery.  (Docs. 18 & 30 ¶¶ 13-14.) Albert claims that the force used to remove him from the police precinct caused a "permanent exacerbation" to his right arm where he had underwent surgery. (Docs. 18 & 30 ¶ 23.)

After Albert was escorted from the police station, Weaver returned to the interview room to conclude his conversation with Gregory Albert and Ms. Waite (Doc. 18 ¶ 16), and Hiester returned to his desk, where he claims to have started drafting an incident report and citation for defiant trespass based on Albert's conduct (id. ¶ 15).  Meanwhile, in the parking lot of the precinct, Albert telephoned the Pennsylvania State Police, claiming that he had been assaulted by Middletown Borough police officers.  (Id. ¶ 18.)

After receiving Albert's call, the Pennsylvania State Police telephoned the Middletown Borough Police Department to inform the officers of Albert's accusations.  (Id. ¶ 19.)  Hiester, who was the shift commander on duty, went to the parking lot and advised Albert that, should he choose to pursue his allegations of assault against the officers, he was to contact the Middletown Borough Chief of

---

[3]  Although the parties dispute the extent of force purportedly used by defendants Weaver and Hiester (Doc. 18 ¶ 11 & n.2), for the purposes of summary judgment only, defendants accept Albert's version of the events as described above. (Id. at n.2.)

Police, who was not at the station at that time.  (Id. ¶ 20.)[4]  Hiester once again

insisted that Albert leave the premises.  (Id. ¶ 21.)

Following this conversation, Hiester returned to his desk and completed an

incident report and the citation for the summary offense of defiant trespass.  (Id. ¶

22); (see Hiester Dep. 65-66, 69-73); see also Commonwealth v. Albert, No. 1072

MDA 2004, at 6 (Pa. Super. Ct. June 10, 2005) (explaining that a defiant trespass

occurs "when a person remains in a place where he is not privileged to remain after

notice of trespass is given") (citation omitted).  Although Albert initially paid the

fine for defiant trespass, he later appealed the citation.  (Doc. 18 ¶¶ 24-25.)  On May

6, 2004, Judge Todd A. Hoover of the Dauphin County Court of Common Pleas held

a summary trial, during which Albert, Hiester, Weaver, Gregory Albert, and Ms.

Waite gave testimony.  (Id. ¶ 26.)  Following the summary trial, Judge Hoover

determined that Albert was guilty of defiant trespass (id. ¶ 27), a decision that

Albert successfully appealed to the Pennsylvania Superior Court (id. ¶¶ 28-29).

In reversing Albert's conviction for defiant trespass, the superior court

explained that, although Albert had "been instructed to leave the premises on at

least three occasions before [he] exited the station," Albert was not explicitly

"placed on notice that he was trespassing or that he may be arrested for defiant

---

[4]  The parties dispute the tenor of this discussion, with defendants presenting
it as a conversation and Albert claiming that Hiester "blew up" at him and went off
on a "tirade."  (Docs. 18 & 30 ¶¶ 20-21.)

trespass." <u>Albert</u>, No. 1072 MDA 2004, at 6-7.[5]  The superior court also commented upon the limited duration of the March 26, 2004, incident, explaining "while no reported decision in Pennsylvania had dealt directly with the amount of time a person has to retreat after notice of trespass has been given, we find, in this instance, that [Albert's] retreat from the premises within one minute of the first request to leave, regardless of his demeanor in leaving, equates with compliance and not defiance." <u>Id.</u> at 7.

Based on these events, Albert contends that defendants Weaver and Hiester: (1) maliciously prosecuted him in violation of the Fourth Amendment; (2) retaliated against him for engaging in protected First Amendment activity; (3) used excessive force against him in violation of the Fourth Amendment; and (4) assaulted and battered him in violation of state tort law.  (Doc. 1.)  Defendants argue that they are entitled to summary judgment on all counts because Albert will not be able to establish the elements of his claims or, alternatively, because they are entitled to the defense of qualified immunity.  (Docs. 19 & 20.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[5]  The parties' exhibits include copies of the superior court's opinion (Doc. 32, Ex. 4; Doc. 18, Ex. 6); however, both exhibits omit pages 2-4 of the appellate decision.  The court obtained the missing pages directly from the prothonotary's office for the superior court.

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000); see also A.W. v. Jersey City Public Schs., 486 F.3d 791, 794 (3d Cir. 2007).  However, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Id. at 322.

## III.   DISCUSSION

### A.   Section 1983 claims

#### 1.   *Malicious prosecution in violation of the Fourth Amendment*

Albert claims that defendants Weaver and Hiester maliciously prosecuted him by filing the citation for defiant trespass against him without probable cause and for impermissible purposes.  To prevail on a claim for malicious prosecution under the Fourth Amendment, a plaintiff must establish that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3)

the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Defendants claim that they are entitled to summary judgment on Albert's Fourth Amendment malicious prosecution claim because Albert did not suffer a deprivation of liberty consistent with the concept of a seizure. (Doc. 20 at 7-9.) Albert counters this assertion by arguing that his physical removal from the police station amounted to a seizure since a reasonable person in his situation would not have felt free to leave. (Doc. 24 at 4.) The parties' submissions focus largely on whether Albert's admittedly brief physical removal from the police precinct amounted to a deprivation of liberty consistent with the concept of a seizure. The parties do not address, however, the important question of whether Albert was seized *as a consequence of a legal proceeding*, and the court finds that, even accepting that Albert was seized by defendants Weaver and Hiester when they removed him from the building, he was not seized *as a consequence of a legal proceeding*. The record demonstrates that at the time Albert was escorted from the precinct, no charges had been filed against him (see, e.g., Doc. 18 ¶ 22), and Albert has introduced no evidence that he suffered a deprivation of liberty *as a result of*

the criminal citation for defiant trespass and related legal proceedings.[6]  Albert's

failure to establish any kind of causal relationship between his citation for defiant

trespass and a subsequent deprivation of liberty prevents him from satisfying the

fifth prong of a Fourth Amendment malicious prosecution claim.

Additionally, defendants argue that Albert's malicious prosecution claim

must fail because Hiester had probable cause to issue the citation.  (Doc. 20 at 9-13.)

The court agrees.  Under Pennsylvania law, probable cause to issue a citation for

defiant trespass exists when the facts and the circumstances within the officer's

knowledge are sufficient for a prudent person to believe that the accused, "knowing

that he is not licensed or privileged to do so, . . . enters or remains in any place as to

which notice against trespass is given by . . . actual communication to the actor."  18

Pa. Cons. Stat. § 3505(b)(1)(i); Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d

Cir. 2005); see also Maryland v. Pringle, 540 U.S. 366, 371 (2003) ("[P]robable cause

is a reasonable ground for belief of guilt.'").

Here, it is undisputed that a loud, heated discussion between Weaver and

Albert began in the interview room and then continued into the hallway of the

precinct, where some officers, including defendant Hiester, were gathering because

---

[6]  The court notes that Albert's attendance at the hearings related to the
defiant trespass citation are insufficient to satisfy this element of a malicious
prosecution claim.  See, e.g., Allen v. Pennsylvania SPCA, 488 F. Supp. 2d 450, 469
(M.D. Pa. 2007).  The Third Circuit has recognized that "[p]retrial custody and some
onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment
seizure"; however, "attendance at trial d[oes] not [itself] qualify as a Fourth
Amendment seizure."  Johnson, 477 F.3d at 85 n.14 (quoting DiBella v. Borough of
Beachwood, 407 F.3d 599, 603 (3d Cir. 2005)).

of the commotion.  (See Doc. 18 ¶ 8 & n.1; id., Ex. 3 at 41-42); (see also id., Ex. 3 at

25) (an officer testified to hearing "loud screaming" from within the interview

room).  While Albert asserts that he was never given actual notice against trespass

(Doc. 24 at 5), he did testify that once the door to the interview room opened,

Weaver "continued very loud, very, very loud, the whole time, leave, leave, leave,

leave, leave." (Doc. 18, Ex. 3 at 42.)  Albert admits that he did not immediately

comply with this request, though he explains that the reason for any hesitation was

his lack of familiarity with the layout of the dimly lit precinct and the presence of

other officers blocking his path.  (Docs. 18 & 30 ¶ 10; Doc. 24 at 5).  Having heard the

elevated voices from within the interview room and having observed the

confrontation in the hallway – including at least one request that Albert leave and

Albert not immediately departing – Hiester had reason to believe that Albert

remained in the police precinct after his privilege to enter and remain in the facility

had been affirmatively revoked by a fellow police officer.[7]  Moreover, that Judge

---

[7] Having found that it was objectively reasonable for Hiester to conclude that
there was probable cause to arrest Albert, the court need not engage in a detailed
discussion of qualified immunity.  Assuming arguendo that probable cause was
lacking, Hiester would nevertheless be entitled to qualified immunity on Albert's
malicious prosecution claim.  Government officials performing discretionary
functions are shielded from civil liability so long as "their conduct does not violate
clearly established statutory or constitutional rights of which a reasonable person
would have known." Estate of Smith v. Marasco, 318 F.3d 497, 510 (3d Cir. 2003)
(quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)).  "[T]he qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly
incompetent or those who knowingly violate the law." Sharrar v. Felsing, 128 F.3d
810, 826 (3d Cir. 1997) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991))
(quotation marks and citation omitted).  Qualified immunity is available to Hiester if
a reasonable officer in his position "at the relevant time could have believed, in light

Hoover of the Dauphin County Court of Common Pleas found Albert guilty of

defiant trespass "at least suggests the existence of probable cause, even if the

conviction[] w[as] later overturned," <u>Barshinger v. Buffington</u>, No. 1:03-CV-0506,

2004 WL 3607974, at *8 (M.D. Pa. June 10, 2004), particularly since the superior

court's decision to overturn the conviction rested, in part, on an aspect of the law

never squarely addressed by the state appellate court, <u>Albert</u>, No. 1072 MDA 2004,

at 8 ("[N]o reported decision in Pennsylvania has dealt directly with the amount of

---

of what was in the decided case law, that [Hiester's] conduct would be lawful." <u>Larsen v. Senate of the Commonwealth of Pennsylvania</u>, 154 F.3d 82, 87 (3d Cir. 1998).

The appellate court overturned Albert's conviction on two grounds: first, that Albert had not sufficiently been placed on notice that he was trespassing and could be criminally cited for the same; and second, that the brief lapse of time between the requests to leave and Albert's "retreat from the premises . . . equate[d] with compliance and not defiance." <u>Albert</u>, No. 1072 MDA 2004, at 6-7. Albert asserts similar grounds in his brief in opposition to the motion for summary judgment. (<u>See</u> Doc. 24 at 5.) As to the former point, the superior court explained that Albert "was merely advised that due to his behavior, the interview was over and he was to leave." <u>Albert</u>, No. 1072 MDA 2004, at 7. However, an officer could reasonably believe that a clear and unequivocal communication informing a person that he is no longer permitted to remain in a police precinct and directing him to leave immediately wold amount to the "notice against trespass" contemplated by the statute. <u>See, e.g.</u>, <u>Feldman v. Community College of Allegheny</u>, 85 F. App'x 821, 825 (3d Cir. 2004) (concluding that officers had probable cause to believe an individual was engaging in defiant trespass where a "a College security guard informed the officers that he had instructed [the individual] to leave and [the individual] had refused to do so"). With respect to the latter ground for reversal, "no reported decision in Pennsylvania ha[d] dealt directly with the amount of time a person has to retreat after notice of trespass has been given," <u>Albert</u>, No. 1072 MDA 2004, at 7, nor does the statute itself address the issue, <u>see</u> 18 Pa. Cons. Stat. § 3503(b)(1)(i). Considering the absence of published case law on the matter, and the tense situation in which Hiester found himself, the court finds as a matter of law that the officer's misjudgment as to the amount of time for compliance with a directive to depart was reasonable under the circumstances.

time a person has to retreat after notice of trespass has been given . . .").  <u>See also</u>

<u>Montgomery v. De Simone</u>, 159 F.3d 120, 127 (3d Cir. 1998) (stating that, if the state

court conviction has been overturned, the lower court's finding of probable cause is

not dispositive of the existence of probable cause in federal court).

In sum, because Albert cannot establish that he suffered a deprivation of

liberty as a result of the criminal citation or that the citation was unsupported by

probable cause, Weaver and Hiester are entitled to summary judgment on his

Fourth Amendment claim for malicious prosecution.

## 2. *First Amendment retaliation*

Albert also contends that defendants infringed upon his First Amendment

rights by filing a citation in retaliation for his contacting the Pennsylvania State

Police to report that Middletown Borough officers assaulted him and for voicing to

Hiester his concern about his alleged mistreatment.  In order to establish a

retaliation claim under the First Amendment, a plaintiff must prove: (1) conduct or

speech protected by the First Amendment; (2) retaliatory action sufficient to deter a

person of ordinary firmness from exercising his First Amendment rights; and (3) a

causal link between the constitutionally protected conduct or speech and the

retaliatory action.  <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (2006); <u>see also,</u>

<u>e.g.</u>, <u>Eichenlaub v. Twp. of Indiana</u>, 385 F.3d 274, 282 (3d Cir. 2004); <u>Rauser v. Horn</u>,

241 F.3d 330, 333 (3d Cir. 2001).  Because Albert's First Amendment claim is

brought under a retaliatory-prosecution theory, it is subject to an additional

requirement, that he allege and prove that the defendants' pursuit of the underlying

criminal charge was unsupported by probable cause.  <u>Hartman v. Moore</u>, 547 U.S. 250, 126 S. Ct. 1695, 1699, 1707 (2006).[8]

In <u>Hartman</u>, the Supreme Court resolved a split among the circuits whether a plaintiff in a retaliatory-prosecution claim bears the burden of alleging and proving the absence of probable cause.  547 U.S. at 1699, 1701.  In answering this question affirmatively, the Court explained that a claim of retaliatory prosecution differs from a standard claim for First Amendment retaliation in two ways: first, evidence showing the presence or absence of probable cause to bring the charge is

---

[8] The parties' submissions suggest that they view the presence or absence of probable cause to be highly relevant evidence in determining whether a prosecution was retaliatory, rather than as a discrete element for a retaliatory-prosecution claim.  (<u>See</u> Doc. 20 at 13-14) ("While the presence or absence of probable cause 'is not necessarily dispositive,' the existence of probable cause is 'a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation.'") (citation omitted); <u>see also</u> (Doc. 31) (contending that "the existence of probable cause . . . is relevant proof of the absence of retaliatory causation").  The Supreme Court's opinion in <u>Hartman</u> certainly discusses the evidentiary value of probable cause to a retaliatory-prosecution claim, but the decision goes beyond a recognition of its evidentiary value; rather, the Supreme Court made the absence of probable cause *an element* of the constitutional tort:

> In sum, the complexity of causation in a claim that the prosecution was induced by an official bent on retaliation should be addressed specifically in defining the elements of the tort.  Probable cause or its absence will be at least an evidentiary issue in practically all such cases.  Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added costs, *it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven.*

<u>Hartman</u>, 126 S. Ct. at 1707 (emphasis added).

13

"highly valuable circumstantial evidence . . . apt to prove or disprove retaliatory causation;" and second, demonstrating causation is usually more complex in retaliatory-prosecution cases than in traditional First Amendment retaliation cases. Id. at 1704.  With respect to the latter point, the Court discussed the multiple levels of causation involved in a retaliatory-prosecution claim, explaining:

> A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute. Instead, the defendant will be a non-prosecutor . . . who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute.   The consequence is that a plaintiff . . . must show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiate without his urging.
> * * *
> Some sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity. . . The connection, to be alleged and shown, is the absence of probable cause.

Id. at 1704-05, 1706.

The present case differs from the situation encountered by the Supreme Court in Hartman because here the record indicates that Hiester charged Albert with the summary offense of defiant trespass without the intervention of a third-party prosecutor.  (Hiester Dep. 65-66, 69-73.)  Only two circuit courts have addressed the situation where the multiple levels of causation contemplated by the Supreme Court in Hartman were absent.  See Barnes v. Wright, 449 F.3d 709 (6th

Cir. 2006); <u>Williams v. City of Carl Junction, Missouri</u>, 480 F.3d 871 (8th Cir. 2007).
In <u>Barnes</u>,  the Sixth Circuit noted that "[t]he concerns regarding the intervening
actions of a prosecutor do not apply in this case, because the officers themselves
initiated the grand jury proceedings against Barnes." 449 F.3d at 720.  The Sixth
Circuit then determined that the rule articulated in <u>Hartman</u> nevertheless applied
to the case before it and to all cases proceeding under a retaliatory-prosecution
theory since "<u>Hartman</u> appears to acknowledge that its rule sweeps broadly."  <u>Id.</u> at
720 (emphasizing the Court's statement that causation in retaliatory-prosecution
cases is "<u>usually</u> more complex than it is in other retaliation cases") (citation
omitted).  In <u>Williams</u>, the Eight Circuit "agree[d] with the Sixth Circuit that the
Supreme Court's holding in <u>Hartman</u> is broad enough to apply even where
intervening actions by a prosecutor are not present, and . . . conclude[d] that the
<u>Hartman</u> rule applie[d]" to the citations issued to the plaintiff by the police chief,
other municipal police officers, and other code-enforcement officers.  480 F.3d at
876.  Although one underpinning of the <u>Hartman</u> Court's rationale was the multiple
levels of causation presented in the typical retaliatory-prosecution case, this court is
persuaded by the reasoning of the Sixth and Eight Circuits.  Accordingly, the court
concludes that <u>Hartman</u> articulated a broad rule that redefined the elements of a
retaliatory-prosecution claim in all cases, not merely those which involve an
intervening prosecutor.

Accordingly, having concluded that <u>Hartman</u> applies in this case, and having
already determined that defendant Hiester had probable cause to cite Albert for

15

defiant trespass, the court finds as a matter of law that Albert cannot establish a First Amendment retaliatory-prosecution claim. Summary judgment on this count will be entered in favor of the defendants.

### 3. *Excessive force*

Albert next claims that Weaver and Hiester violated his Fourth Amendment rights when they "each grabbed one of Plaintiff's arms, cupped their hands under each of Plaintiff's elbows, lifted him off the ground, and carried him down the hallway to the doorway to the police station, whereupon they pushed him out of the door." (Doc. 18 ¶ 11.) Defendants maintain that their use of force was reasonable and appropriate under the circumstances with which they were confronted.

The court analyzes excessive force claims under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 394-95 (1988). Determining whether an officer's use of force was reasonable, a court generally should consider a number of factors, such as: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety; (3) whether the suspect is actively resisting arrest; (4) the duration of the officer's action; (5) the context of the action, such as whether the officer was effecting an arrest; (6) the possibility that the suspect is armed; and (7) the number of persons involved in the situation. Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006). The Third Circuit has explained that, "[i]n evaluating reasonableness, the court must take into consideration the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –

16

about the amount of force that is necessary in a particular situation." <u>Id.</u> at 496-97

(quotation marks and citation omitted); <u>see also</u> <u>Graham</u>, 490 U.S. at 396 ("[T]he

'reasonableness' inquiry in an excessive force case is an objective one: the question

is whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or

motivation.")  The Supreme Court has made clear that "[n]ot every push or shove,

even if it may later seem unnecessary in the peace of a judge's chambers, violates

the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396 (internal quotations and citation

omitted).  Because this standard calls for the consideration of the facts and

circumstances within a particular officer's knowledge, <u>see</u> <u>id.</u>, the court will

evaluate Albert's excessive force claims as to defendants Hiester and Weaver

separately.

### a.    Defendant Hiester's use of force

Upon consideration of the facts and circumstances known to Hiester, the

court concludes that, from the perspective of a reasonable officer at the scene, the

level of force used by Hiester to secure Albert's removal from the precinct was

objectively reasonable.  As discussed above, Hiester overheard loud voices from

within the confines of the interview room and observed the confrontation between

his fellow officer and a stranger when their discussion moved to the hallway.  Albert

was asked to leave, and when it appeared that Albert was not immediately

complying with the request to exit the precinct, Hiester grasped Albert's left arm

and, along with officer Weaver, physically escorted Albert to the precinct's exit.

17

Albert has presented no evidence that, at the time Albert was removed from the building, Hiester knew or should have known of the recent surgery to his arm,[9] such that grasping the adult male by his arm and lifting upward to carry Albert out of the precinct would cause him injury. Based on the evidence of record – including the close confines of the precinct, the heated discussion between Weaver and Albert in the hallway, Albert's hesitation in complying with the demand to exit, and the relatively minor amount of force exerted – the court finds that no reasonable jury could conclude that Hiester used excessive force in securing Albert's removal from the building. Accordingly, Hiester is entitled to summary judgment on Albert's Fourth Amendment excessive force claim.

### b.   Defendant Weaver's use of force

The disputed material facts surrounding Weaver's interaction with Albert prevent the court from determining whether Weaver's use of force, in light of the facts and circumstances known to him, was objectively reasonable. Unlike Hiester who was unaware of Albert's surgery until after the fact, Albert has introduced evidence that he informed Weaver of his surgery at the very beginning of their meeting. (Doc. 30 ¶ 4); (see also Pl's Dep. 45-46) (Albert "indicated to [Weaver] at that point that [he] just had surgery on my arm" and that he "had other problems with . . . the right arm and shoulder.") Albert has also presented evidence that he

---

[9] In fact, Albert purposely removed the sling that he had been wearing prior to arriving at the police station so that the officers would not know he had an injury or limitation, as he was concerned they might restrict his driving privileges. (Doc. 18 ¶ 13.)

complained of pain to his right arm when Weaver allegedly accosted him inside the interview room.  (Decl. of Gregory Albert at 2.)  Indeed, Albert has presented evidence from which a jury could find that Weaver was the initial aggressor who, while inside the interview room and out of the sight of other officers, became frustrated with Albert's repeated questions regarding the investigation into his son, lunged at Albert "us[ing] his full body to suppress [Albert]," shouted that Albert needed to leave immediately, and then "forcefully grabbed [Albert's injured] right arm with both of his hands" in an effort to remove Albert from the interview room. (Pl's Dep. 57-59; Decl. of Gregory Albert at 1-2.)  The court cannot say that an officer fully apprised of Albert's physical condition and knowledgeable of the events that transpired inside the interview room would believe that grabbing an individual's injured arm and using it to remove him from the police station would be reasonable use of force under Fourth Amendment standards.  Accordingly, Albert's Fourth Amendment excessive force claim against Weaver will be allowed to proceed.

### B.    State-law tort claims for assault and battery

Plaintiff also asserts state-law claims of assault and battery against both defendants.  A police officer is justified to commit what would otherwise be an assault and/or battery in order to carry out his official duties, such as when making an arrest, so long as the force used is reasonable.  Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994).  As explained above, Hiester's use of force to remove Albert from the police station was objectively reasonable under the circumstances and in light of the facts known to him at the time.  Accordingly, he is entitled to summary

judgment on this count; Weaver, however, is not entitled to summary judgment on the state-law claims because genuine issues of material fact remain as to the reasonableness of his use of force.

## IV.   CONCLUSION

The Court finds that defendants are entitled to summary judgment on all claims except for Albert's excessive force and state-law claims against Weaver, as disputed issues of material fact prevent the court from determining whether Weaver's use of force was objectively reasonable in light of the facts and circumstances known to him.

An appropriate order follows.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       August 15, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JERRY L. ALBERT,** | : | **CIVIL ACTION NO. 1:05-CV-2380** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **JEFFREY W. WEAVER and** | : | |
| **RICHARD HIESTER**, | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 15th day of August, 2007, upon consideration of defendants'

motion for summary judgment (Doc. 19), and for the reasons discussed in the

court's memorandum opinion, IT IS HEREBY ORDERED THAT defendants'

motion (Doc. 19) is GRANTED IN PART as follows:

(1)    Summary judgment is granted in favor of defendant Hiester on all
counts; and

(2)    Summary judgment is granted in favor of defendant Weaver on
plaintiff's Fourth Amendment claim for malicious prosecution and his
First Amendment claim for retaliatory prosecution.

In all other respects, the motion is DENIED.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge